UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:07CV-36-M

MELISSA ANNE McDANIEL and MICHAEL McDANIEL    PLAINTIFFS

v.

BSN MEDICAL, INC., JOHNSON & JOHNSON, and
DePUY ORTHOPAEDICS, INC.    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the plaintiffs, Melissa Anne McDaniel and Michael McDaniel, to admit at trial the video deposition of Dr. Moreno [DN 110]. Fully briefed, this motion is ripe for decision.

### I. BACKGROUND

In their complaint, the plaintiffs allege that Melissa suffered serious physical injuries when her hand and arm were drawn into the nip point area of a machine used to create cast padding while working at American Nonwovens Corporation in Beaver Dam, Kentucky. (Am. Compl. ¶¶ 9-12.) They claim that the machine that caused Melissa's injuries was supplied by the defendants to American Nonwovens in an unreasonably dangerous condition. (Id. ¶¶ 13-18, 20-23.) As a result, Melissa's left arm was crushed and she sustained serious burns. (Id. ¶ 12.)

After she sustained her injuries, Melissa was treated by Dr. Moreno, an orthopedic surgeon in Louisville, who, as a result of Melissa's injuries, amputated her left arm below the elbow. The plaintiffs, who took a video deposition of Dr. Moreno on November 2, 2009, have requested that they be allowed at trial to present Dr. Moreno's deposition testimony in lieu of

his live testimony. They argue that pursuant to Fed. R. Civ. P. 32(a), Dr. Moreno is more than 100 miles away from the courthouse in Owensboro, or that exceptional circumstances otherwise exist that would warrant the use of his deposition testimony at trial. The defendants disagree on both points. They maintain that Dr. Moreno works and lives less than 100 miles away from the courthouse and that the circumstances of this case are not so exceptional so as to permit Dr. Moreno's deposition testimony to be used at trial in lieu of his live testimony.

## II. DISCUSSION

Rule 32 provides

> At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a)(1). The plaintiffs argue that condition (C) is satisfied because, pursuant to Rule 32(a)(4), Dr. Moreno is unavailable to testify at trial. According to Rule 32(a)(4) a witness is unavailable to testify at trial if the Court finds that the witness "is more than 100 miles from the place of hearing or trial or . . . on motion and notice, that exceptional circumstances make it desirable–in the interest of justice and with due regard to the importance of live testimony in open court–to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(B) & (E).[1]

---

[1] A witness is also unavailable to testify at a trial if the Court finds that the witness is dead, cannot attend or testify because of age, illness, infirmity or imprisonment, or the witness's attendance could not be procured through subpoena. Fed. R. Civ. P. 32(a)(4)(A), (C), & (D). The

2

## A. 100-MILE RULE

The plaintiffs first argue that Dr. Moreno is unavailable because "the shortest route of public travel from both Dr. Moreno's home and place of employment [to the courthouse in Owensboro] is over 100 miles." (Plas.' Mem. in Support at 3.) The defendants, although not disputing that Dr. Moreno would be required to drive more than 100 miles from Louisville to the courthouse, contend that this is not the appropriate methodology for calculating distance under Rule 32. Instead, the defendants advocate for the use of the straight line method such that the distance from Dr. Moreno's home or place of employment to the courthouse is determined "as the crow flies."

In SCM Corp. v. Xerox Corp., 76 F.R.D. 214 (D. Conn. 1977), the district court was presented with a similar factual scenario. There, a witness, when utilizing the straight line method, was 88 miles away from the courthouse in Hartford, Connecticut, yet the shortest route by normal modes of transportation would have required the witness to drive 113 miles. Id. at 214-15. The court first noted that the 100-mile provision in Rule 32 uses similar language to the so-called "bulge" provision of Rule 4(k), which allows a party under certain circumstances to be served "not more than 100 miles from where the summons was issued." Id. at 215. And "[s]ince its adoption in 1963, the 100-mile distance for 'bulge' service has uniformly been construed to mean a straight line measurement." Id. (citing Pillsbury Co. v. Delta Boat & Barge Rental, Inc., 72 F.R.D. 630 (E.D. La. 1976)); see 4B Charles Alan Wright & Arthur R. Miller,

---

plaintiffs, however, do not contend that Dr. Moreno is considered "unavailable" pursuant to these provisions.

Federal Practice and Procedure § 1127 n.1 (3d ed. 2001) ("the modern trend is to measure the distance in a straight line so that the area in which service can be made can be indicated by a circle with the place of trial as its center and the 100 miles represented as the circle's radius."). The court recognized several benefits to interpreting Rule 32 uniformly with Rule 4. For instance, using the straight line method would "avoid[] trivial disputes as to which actually are the ordinary, usual, and shortest routes of travel." SCM Corp., 76 F.R.D. at 215. For these reasons the court utilized the straight line method to determine whether a witness's deposition could be utilized in lieu of live testimony under Rule 32.[2] Id. at 216.

It appears that this issue raises a question of first impression in the Sixth Circuit. Nevertheless, the position that the Sixth Circuit has taken on the use of the straight line method in other contexts convinces the Court that this is the most appropriate methodology for calculating distance under Rule 32. See, e.g., Senzarin v. Abbott Severance Pay Plan for Employers of KOS Pharm., No. 08-4306, 2010 WL 114199 (6th Cir. Jan. 11, 2010). In Senzarin, the Sixth Circuit noted various advantages to using a straight line method: "[u]sing straight line distance removes numerous variables from the mileage calculation, including different routes, various methods of transportation, road construction or closure, and personal preference." Id. at *4. The court also recognized that other courts were utilizing the straight

---

[2] Professor Moore also advocates for use of the straight line method. 7 Moore's Federal Practice § 32.24[3][a] (Matthew Bender 3d. ed.) ("Distance from the courthouse to the location of the witness is measured by the straight-line method, or, in the vernacular, 'as the crow flies.'"); see also United States v. IBM Corp., 90 F.R.D. 377, 383 n.9 (S.D.N.Y. 1981) (holding that in the context of Rule 32, "[t]his court agrees that the distance should be measured 'as the crow files' . . . ."); cf. Hill v. Equitable, N.A., 115 F.R.D. 184, 186 (D. Del. 1987) ("Using a straight line measurement will avoid trivial disputes over what is the ordinary and usual travel route.").

4

line methodology in calculating distance under the Federal Rules of Civil Procedure:

> In different contexts, other courts have found it appropriate to use the straight line method or "as the crow flies" in measuring distance between two points. Sprow v. Hartford Ins. Co., 594 F.2d 412, 417-18 (5th Cir. 1979) (holding that 100-mile distance under former Fed. R. Civ. P. 4(f) is to be measured "as the crow flies"); United States ex rel. Sheehy v. Johnson, 12 App. D.C. 92, 1898 WL 15581, at *6 (D.C. Cir. Jan.4, 1898) (holding, regarding statutory interpretation, "We must take it to be the general rule, that, unless some other mode of measurement is prescribed or indicated, distance is always to be measured in a straight line, on a horizontal plane."); Schwartz v. Marriott Hotel Services, Inc., 186 F. Supp. 2d 245, 251 (E.D.N.Y. 2002) (noting that 100-mile travel rule of Rule 45 is measured by straight line) . . . .

Id. at *4 n.3.

Because of the advantages associated with using the straight line methodology to calculate distance, see, e.g., Senzarin, 2010 WL 114199, at *4; SCM Corp., 76 F.R.D. at 215, the Court adopts that methodology for use under Rule 32. And as the plaintiffs acknowledge that Dr. Moreno's home and place of employment are each within 100 miles of the courthouse when using this methodology, he is not considered "unavailable" for purposes of Rule 32(a)(4)(B).

## B. EXCEPTIONAL CIRCUMSTANCES

The plaintiffs also argue that exceptional circumstances exist to allow Dr. Moreno's deposition testimony to be used at trial pursuant to Rule 32(a)(4)(E). They point out that Dr. Moreno has a very busy surgical and clinical schedule that would make it very difficult to provide live testimony. Dr. Moreno, who is employed as an attending physician at Kleinert & Kutz, has submitted an affidavit in which he states:

> My weekly clinical and surgical schedule at Kleinert & Kutz is as follows:
> A. I evaluate approximately 65 patients each day on my clinical days,

    which are every Monday, Wednesday, and Thursday.
  B. I perform approximately 6-8 surgeries each day on my surgical case days, which are every Tuesday and Friday.
  C. In addition to my clinical and surgical duties, I am placed on 24 hour in-house call 6-7 days per month. This requires me to be within a short driving distance of Jewish Hospital.

It would be extremely difficult on my patients and practice if, for any reason, I had to reschedule any appointments or surgeries in order to appear at trial to testify.

(Dr. Rodrigo Moreno Aff. ¶¶ 3-4.) The defendants contend that a doctor's busy schedule does not constitute exceptional circumstances, or at the very least, such a determination is premature at this point in time.

  "Courts are sharply split on the circumstances under which a physician's professional responsibilities may constitute 'exceptional circumstances,' justifying the admissibility of his or her deposition even when the witness is within the subpoena power of the court." Hague v. Celebrity Cruises, Inc., No. 95CIV.4648(BSJ)(JCF), 2001 WL 546519, at *1 (S.D.N.Y. May 23, 2001) (citations omitted). Some courts have held "that a physician or other witness with an unpredictable schedule is unavailable to testify at trial and thus allow his or her deposition testimony to be read." Melore v. Great Lakes Dredge & Dock Co., No. 95-7644, 1996 WL 548142, at *3 (E.D. Pa. Sept. 20, 1996) (a note from witness to the court indicating that she was "absolutely unavailable" because of her duties as a doctor presented exceptional circumstances) (citing Spangler v. Sears Roebuck & Co., 138 F.R.D. 122, 125 n.2 (S.D. Ind. 1991)); see also Rubel v. Eli Lilly & Co., 160 F.R.D 28, 29 (S.D.N.Y. 1995) (a doctor who maintained he was unable to testify because all other physicians in his medical practice were unexpectedly unavailable to treat patients presented exceptional circumstances); Borchardt v. United States,

133 F.R.D. 547, 548 (E.D. Wis. 1991) (the cost to present live testimony of a doctor ($1,250) presented exceptional circumstances where plaintiff's claim was for only $12,402.19); Reber v. Gen. Motors Corp., 669 F. Supp. 717, 720 (E.D. Pa. 1987) (a heavy surgical schedule of a doctor presented exceptional circumstances).

Others, such as the Tenth Circuit in Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 963 (10th Cir. 1993), have held that a doctor's "extremely busy" schedule is an insufficient justification for finding exceptional circumstances under Rule 32(a)(4)(E). See also Flores v. NJ Transit Rail Operations, Inc., No. 96-3237, 1998 WL 1107871, at *2-5 (D.N.J. Nov. 2, 1998) (busy schedule of a doctor, even one that is a specialist in a particular field, does not present exceptional circumstances); Bobrosky v. Vickers, 170 F.R.D. 411, 415 (W.D. Va. 1997) (the mere fact that doctors were deposed at great expense does not present exceptional circumstances absent evidence "that the doctors' schedules or personal circumstances would preclude them from being able to appear in court."). The Sixth Circuit in Allgeier v. United States, 909 F.2d 869 (6th Cir. 1990) concluded that a witness is not "automatically unavailable" simply because he or she is a physician. Id. at 876. "[M]ore persuasive evidence of unavailability" is required before allowing the use of deposition testimony at trial. Id. How persuasive the evidence must be "under Rule [32(a)(4)(E)] is indicated by its companion provisions. These authorize use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena." Id. (citation omitted).

Under the facts of this case, the Court finds that there is sufficient evidence of

unavailability such that Dr. Moreno's deposition testimony can be used at trial. This is not a case like Allgeier in which the witness is simply seeking to avoid live testimony because he is a doctor. Instead, Dr. Moreno has presented an affidavit indicating that his busy schedule would require him to treat patients, either clinically or surgically, Monday through Friday. Even if he has a break in his schedule on any particular day, it would be very inconvenient for him to travel to Owensboro to testify at trial. Furthermore, this is simply not a case where Melissa's medical treatment is being called into question or where Dr. Moreno's credibility is being challenged. As the Court in Borchardt explained, "[a]lthough live testimony is preferable to deposition testimony, there is no need to insist upon live testimony when the credibility of the witness is not in question." Borchardt, 133 F.R.D. at 548; see also 7 Moore's Federal Practice §32.28[2] ("The preference for oral testimony by a present witness is of special concern when a case turns on the credibility of testimony that is contradicted by other witnesses."). And to the extent Dr. Moreno's testimony is called into question, any concern over the inability for the jury to assess his credibility is significantly alleviated because the deposition will be presented to the jury by video rather than being read from a transcript.

> Videotaped testimony prepared specifically for use at trial mitigates the concerns militating against the use of depositions in lieu of live testimony. First, although the witness is not physically present in the courtroom, the jury has the opportunity to observe his manner and hear his voice during the testimony. Second, the witness is questioned just as he would be at trial by counsel for both parties.

Hague, 2001 WL 546519, at *2 (quotation omitted) (internal markings removed).

The defendants suggest that this determination by the Court is premature as a trial date has not been set. They note that circumstances may change and that Dr. Moreno may become

available to testify at trial on a later date. If circumstances do change, the defendants may bring those changed circumstances to the Court's attention and the Court may reconsider its decision. But so long as the circumstances remain the same, the Court finds that in the interests of justice and with due regard to the importance of live testimony in open court, that exceptional circumstances exist and Dr. Moreno's video deposition may be used at trial. Therefore, that portion of the plaintiffs' motion is granted.

The plaintiffs note that the defendants objected to the introduction of four medical illustrations during Dr. Moreno's deposition. The plaintiffs now seek to have the Court rule upon those objections. However, as the defendants have not brought any such objection to the Court's attention, this matter is not yet ripe. If the defendants wish to object to the introduction of such exhibits through a motion in limine, the Court will address those matters at that time. But it is unnecessary for the Court to do so now, and therefore, this portion of the plaintiffs' motion is denied.

### III.  CONCLUSION

Accordingly, the motion by the plaintiffs, Melissa Anne McDaniel and Michael McDaniel, to admit at trial the video deposition of Dr. Moreno [DN 110] is **GRANTED in part** and **DENIED in part**.

cc:     Counsel of Record