# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:07-CV-00036**

| | |
|---|---|
| **MELISSA ANNE McDANIEL and** | **PLAINTIFFS** |
| **MICHAEL McDANIEL** | |

**and**

| | |
|---|---|
| **KENTUCKY EMPLOYER'S** | **INTERVENING PLAINTIFF** |
| **MUTUAL INSURANCE** | |

**v.**

| | |
|---|---|
| **BSN MEDICAL, INC.,** | **DEFENDANTS/** |
| **DePUY ORTHOPAEDICS, INC.,** | **INTERVENING DEFENDANTS** |
| **and JOHNSON AND JOHNSON** | |

**and**

| | |
|---|---|
| **DePUY ORTHOPAEDICS, INC.** | **THIRD-PARTY PLAINTIFF** |

**v.**

| | |
|---|---|
| **AMERICAN NONWOVENS** | **THIRD-PARTY DEFENDANT** |
| **CORPORATION** | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 132] by Defendant DePuy Orthopaedics, Inc. ("DePuy") and Defendant Johnson and Johnson ("J & J") to dismiss Plaintiff Melissa Anne McDaniel's personal injury claim and Plaintiff Michael McDaniel's loss of consortium claim. Fully briefed, the matters are ripe for decision. For the reasons that follow, the motion is granted.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue

of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND FACTS

This controversy arises out of an injury suffered by Mrs. McDaniel while operating a micropleater ("MP-1")[1] at the American Nonwovens Corporation ("ANC") in Beaver Dam, Kentucky. On June 20, 2006, Mrs. McDaniel realized that debris had collected near the nip point of the MP-1. With the machine still operating, she put on a heat resistant glove and attempted to remove the debris. Her left hand became caught between the two heated rollers and her arm was pulled through the machine up to her forearm. Mrs. McDaniel ultimately required the amputation

---

[1] A micropleater is a piece of machinery whose function is to pull a material known as "non-woven" between two heated rollers and transform it into a fabric to be used by health care professionals as under cast padding.

2

of her arm below the elbow due to her injuries. She later received worker's compensation through her employer, ANC. Although the MP-1 was equipped with an acceptable industry standard guard when the pleater roll was in the down position, once raised, Plaintiffs allege the guard was ineffective to prevent operators from coming into contact with the nip point.

The MP-1 was designed and manufactured by Johnson and Johnson ("J&J"). DePuy Orthopaedics, Inc. ("Depuy"), a wholly owned subsidiary of J&J, initially supplied the MP-1 to ANC in order for ANC to exclusively manufacture the under cast padding for DePuy's business. DePuy retained ownership of the MP-1 throughout its relationship with ANC. BSN then acquired the MP-1 in March of 2004 through the purchase of Depuy's cast padding business. Following the sale, ANC's relationship with BSN remained similar to that had with DePuy in which ANC continued to use, possess, and maintain the MP-1 in order to exclusively supply BSN with the cast padding product.

## III. DISCUSSION

Plaintiffs allege that J & J, as manufacturer of the MP-1, failed to exercise reasonable care to make the MP-1 safe and to warn of the MP-1's dangerous propensities. J & J claims that it was merely a casual manufacturer of the MP-1 and discharged its duty to warn of any unknown and non-obvious dangers. Plaintiffs also allege that DePuy failed to warn of the dangers associated with the MP-1. DePuy, admitting its role as a supplier, alleges it owed no duty to warn because Mrs. McDaniel and her employer ANC had actual knowledge of the MP-1's dangers, ANC was a sophisticated user, and the dangers were open and obvious.

In order to prevail on their common law negligence claims, Plaintiffs must establish: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." Mullins v.

3

Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky. 1992) (citing Illinois Central R.R. v. Vincent, 412 S.W.2d 874, 876 (Ky. 1967)). J & J and DePuy have only challenged the existence of the first element, duty, so for purposes of this opinion breach and injury are assumed present. The threshold question of law for the Court therefore is whether J & J owed a duty as a manufacturer, and whether DePuy owed a duty as a supplier. See Pathways, Inc. v. Hammons, 113 S.W.3d 85, 89 (Ky. 2003) ("Duty, the first element, presents a question of law."). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." Jenkins v. Best, 250 S.W.3d 680, 688 (Ky. Ct. App. 2007) (quoting Ashcraft v. Peoples Liberty Bank & Trust Co., 724 S.W.2d 228, 229 (Ky. Ct. App. 1986)). The Court will discuss in turn whether: (a) J & J owed a duty to Mrs. McDaniel to manufacture a product that is reasonably safe; and (b) J & J and DePuy owed a duty to provide an adequate warning to Mrs. McDaniel of the MP-1's alleged dangerous propensities.

**A. Duty to Exercise Reasonable Care**

It is a well established principle that a "manufacturer and the seller of a product owe a legal duty of due care to those affected by the product's use, generally stated as the obligation to conform to the standard of conduct of a reasonable person under similar circumstances." 63 Am. Jur. 2d Products Liability § 212 (2010). If the manufacturer has "failed to use reasonable care to eliminate foreseeable dangers, which subject a user of a product to an unreasonable risk of injury," liability will be imposed. Id. See Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 782 (Ky. 1984) ("The manufacturer has a non-delegable duty to provide a product reasonably safe for its foreseeable uses, a duty not abrogated by warning to the immediate purchaser."). Common law

4

manufacturer negligence appears in the Restatement (Second) of Torts §§ 395, 398 (1965)[2]. Section 395 provides:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Similarly, section 398 provides:

> A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

Plaintiffs claim that J & J owed a duty to exercise reasonable care because Mrs. McDaniel was a foreseeable user of the MP-1. J & J alleges that as casual manufacturers, their duty is limited to only warn users of the MP-1 as to any dangerous defects. Said differently, because J & J did not manufacture the MP-1 in the regular course of its business, J & J alleges that it owed no duty under the Restatement other than to warn of any non-obvious and unknown dangers.

In Griffin Industries v. Jones, a strict liability case, the court found that "[o]ne who employs a product for internal use does not incur the liability of a manufacturer" based on the distinction between manufacturers and sellers in the normal course of business and, on the other side of the coin, those that are occasional or casual. 975 S.W.2d 100, 103 (Ky. 1998), *overruled in part on*

---

[2] The Restatement (Second) of Torts § 398 cmt. a (1965) states: "The rule stated in this Section [398] . . . is a special application of the rule stated in § 395." Accordingly, section 395 and 398 will be discussed concurrently.

*other grounds*, Compex Intern. Co., v. Taylor, 209 S.W.3d 462, 464 (Ky. 2006). Recognizing that "[t]he general considerations presented to justify the imposition of strict liability on manufacturers and sellers in the normal course of business [were] not applicable . . . because [the defendant was] not engaged in the sale of the allegedly defective product as a regular part of its business," the Griffin court adopted the casual manufacturer doctrine as a defense to strict liability. Id. at 102-103 (citing Sukljian v. Ross & Son Co., 503 N.E.2d 1358, 1362 (1986) (when company is merely "disposing of its surplus equipment in an occasional sale . . . there is no basis in public policy for the imposition of strict liability")).

J & J urges this Court to extend the casual manufacturer doctrine to regular negligence claims. It seems an appropriate extension to make under the peculiar facts of this case, one which Kentucky courts would likely approve, given the Griffin Industries decision. Under these facts, the Court concludes that J & J is not a "manufacturer" for purposes of Restatement section 395. Although the Restatement does not define the term "manufacturer," it does provide for the policy considerations behind imposing the ordinary duty of reasonable care on manufacturers:

> The justification for the imposition of ordinary principles of negligence liability upon manufacturers 'rests upon the responsibility assumed by the manufacturer toward the consuming public, which arises, not out of contract, but out of the relation resulting from the purchase of the product by the consumer; upon the foreseeability of harm if proper care is not used; upon the representation of safety implied in the act of putting the product on the market; and upon the economic benefit derived by the manufacturer from the sale and subsequent use of the chattel.'

Gebo v. Black Clawson Co., 703 N.E.2d 1234, 1238 (N.Y. 1998) (quoting Restatement (Second) of Torts § 395 cmt. b (1965)).

The justifications behind section 395 clearly illustrate that the duty on manufacturers to

exercise reasonable care only "exist[s] for person[s] and companies who regularly, and in the course of their principal business, create, assemble and/or prepare goods for sale to the consuming public." Olson v. U.S. Industries, 649 F. Supp. 1511, 1516 (D. Kan. 1986). In other words, manufacturers involved in an isolated sale of equipment produced for in-house purposes are not "manufacturers" as contemplated by the Restatement and therefore can not be held liable under section 395.

Relying on comment c of section 395, several courts have concluded the same. In Olson v. U.S. Industries, the court found the defendant who produced a machine "simply for in-house use" and not "in contemplation of sale as a commercial product," did not qualify as a "manufacturer" under section 395 of the Restatement. 649 F. Supp. at 1514-15. Similarly, in Gebo v. Black Clawson Co., the defendant that produced a machine for in-house purposes that caused the plaintiff to lose four fingers that became caught in the nip point was absolved from negligence because the "policy considerations which serve[d] to justify the imposition of ordinary negligence liability upon the manufacturer and the seller in the normal course of business [did not] apply with equal weight and force to defendant." 703 N.E.2d at 1238.

In the case at hand, the policy reasons for imposing the special duties and liabilities of a manufacturer on J & J are also not present. J & J is in the business of selling medical products, not micro-pleating machines. The sole purpose in creating the MP-1 was for internal production of the cast padding and J & J did not "derive[] significant commercial or economic benefit from the one-time bulk sale of" the MP-1. Gebo, 703 N.E.2d at 1238. Furthermore, the injury to Mrs. McDaniel did not result from J & J's activities within the health care market, but instead from J & J's "one-time bulk sale of its . . . manufacturing equipment and the purchaser's subsequent use of that equipment, events which were not foreseeable at the time the guarding system was designed." Id.

7

ANC, as the possessor of the MP-1, cannot be said to have held the same type of expectations that J & J would continue to stand behind its products following the sale to BSN.

The sale of the in-house produced MP-1 to BSN was an isolated transaction that is insufficient to hold J & J to the duties and liabilities of a manufacturer under the Restatement. Accordingly, the claims against J & J for failure to exercise reasonable care pursuant to section 395 and section 398 of the Restatement are dismissed.

**B. Duty to Warn**

"Kentucky law imposes a general duty on manufacturers and suppliers to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." Watters v. TSR, Inc., 904 F.2d 378, 381 (6th Cir. 1990). This common law duty is derived from the Restatement (Second) of Torts § 388 (1965) which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Plaintiffs claim both J & J and DePuy breached this duty by failing to warn Mrs. McDaniel of the dangerous propensities of the MP-1. Defendants claim subsection (b) relieves them from any duty to warn in this case because Mrs. McDaniel and ANC supervisory employees were aware of

8

the MP-1's dangers. The Court agrees with Defendants.

A well established exception of the duty to warn is that "[t]here is no duty to warn the user of a product when the user is aware of the product's danger." Hutt v. Gibson Fiber Glass Prod., Inc., 914 F.2d 790, 793 (6th Cir. 1990). Although Mrs. McDaniel claims she did not have specific knowledge of the dangers of the nip point, this disputed fact is of no consequence as ANC managers and supervisory employees were aware. In a similar Kentucky case, Hercules Powder Co. v. Hicks, 453 S.W.2d 583 (Ky. 1970), both the supplier and manufacturer were relieved of a duty to warn despite one of the plaintiffs denying actual knowledge of the dangers associated with dynamite. The Hicks court held:

> If it be assumed that [plaintiff] had no personal knowledge of the danger in probing the high spot, the failure of [employer's] foreman and other supervisory employees to apprise plaintiff of that fact (which they did know) was such an intervening and unforeseeable act as to insulate [supplier] as well as [manufacturer] from liability to [plaintiff].

Id. at 591. See Ralston Purina Co. v. Farley, 759 S.W.2d 588, 590 (Ky. 1988) ("'[N]otice to the independent contractor of hazards within the employment area is notice to his employees, as such independent contractor has the duty to transmit such notice or warning to his individual employees.'") (quoting Schwarz v. Gen. Elec. Realty Corp., 126 N.E.2d 906, 910 (Ohio 1955)); Gebo, 703 N.E.2d at 1238-39 (N.Y. 1998) ([T]here exists a wealth of uncontroverted evidence in this case that . . . both the long-time owner of the embossing unit and plaintiffs [sic] employer at the time of the accident, was aware of the very problems which led to plaintiffs [sic] injuries. It is also undisputed in this case that . . . awareness of the problems was widespread among its supervisors and employees. . . . [plaintiff's employer] failed, however, to take any additional defensive actions. We agree with Supreme Court that any causal connection between the negligent acts or omissions

9

of [manufacturer], in its alleged failure to provide plaintiff adequate warnings and the injuries which later resulted was sufficiently negated."). In sum, the court in Hicks declined to find that the duty to warn "could extend to a requirement that [the manufacturer or supplier] see to it that each and every employee . . . should have individual warning and instruction." Hicks, 453 S.W.2d at 590. The supplier's and manufacturer's duty to warn was sufficiently absolved because the "responsible and supervisory employees of [plaintiff's employer] knew of the problem and the danger." Id.

The same is the case here. ANC supervisors and managers had actual knowledge of a similar accident and the dangers presented by placing a hand near the MP-1's in-feed side of the nip point. Wayne Robbins, ANC's plant manager, admitted knowing that the nip point presented a dangerous situation and therefore trained employees not to put their hands near there. (Robbins Dep. 66:16-67:21, June 30, 2008.) In fact, ANC had several other similar machines equipped with nip points and "employees at ANC were, generally speaking, taught not to get their hands anywhere near the in-feeding side of any machine." (Vaught Dep. 20:22-21:7, June 1, 2009.) Another supervisor, Renay Roberts, had personally witnessed an employee suffer a severe injury after getting an arm pulled through the nip point of the MP-1 while at the Stearns location. Roberts relayed this story to ANC supervisors and managers in hopes of having a lockout/tagout policy implemented when the MP-1 moved locations to Beaver Dam. (Roberts Dep. 22:9-23:9, June 2, 2009.) Mary Ball, Mrs. McDaniel's supervisor at the time of the accident, was aware of the previous injury at Stearns and stated that Ms. Roberts' experience was used to train incoming employees on the dangers of approaching the MP-1 from the feed in side with the rollers still operating. (Ball Dep. 34:19-35:15, June 1, 2009.)

ANC's alleged failure to inform Mrs. McDaniel of the danger of sticking one's hand near

the in feed side of the nip point while the MP-1 was operating was such an intervening and unforeseeable act that both DePuy's and J & J's duty to warn is abrogated. J & J and DePuy had a reason to believe that Mrs. McDaniel would realize the MP-1's dangerous condition because ANC supervisors and managers were on notice of the MP-1's dangers. No additional warning was necessary. Therefore, any causal connection between the negligent omissions of DePuy or J & J to provide adequate warning and the later resulting injures was sufficiently negated. Although Defendants allege several other reasons for absolving their duty to warn Mrs. McDaniel of the dangers of the MP-1, they need not be addressed based on the foregoing.

Accordingly, Plaintiffs' common law negligence claims against both J & J and DePuy are dismissed.

### C. Loss of Consortium Claim

A loss of consortium claim "is derivative in nature, arising out of and dependent upon the right of the injured spouse to recover." Floyd v. Gray, 657 S.W.2d 936, 941 (Ky. 1983). Mr. McDaniel's claim "arises out of the same personal injury" as his wife's claim. Id. Thus, Mr. McDaniel "is subject to all of the same defenses as are available against [his wife]." Id. J & J and DePuy are absolved from Mrs. McDaniel's common law tort claim and therefore are also absolved from Mr. McDaniel's loss of consortium claim. The loss of consortium claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [DN 132] is **GRANTED**. J & J's and DePuy's Motion to Exclude Plaintiffs' Expert Stan Smith [DN 136], and DePuy's Motion for Default Judgment again ANC [DN 131] are **DENIED AS MOOT**.

cc. Counsel of Record