# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:07-CV-00036**

| | |
|---|---|
| **MELISSA ANNE McDANIEL and MICHAEL McDANIEL** | **PLAINTIFFS** |
| and | |
| **KENTUCKY EMPLOYER'S MUTUAL INSURANCE** | **INTERVENING PLAINTIFF** |
| v. | |
| **BSN MEDICAL, INC., DePUY ORTHOPAEDICS, INC., and JOHNSON AND JOHNSON** | **DEFENDANTS/ INTERVENING DEFENDANTS** |
| and | |
| **DePUY ORTHOPAEDICS, INC.** | **THIRD-PARTY PLAINTIFF** |
| v. | |
| **AMERICAN NONWOVENS CORPORATION** | **THIRD-PARTY DEFENDANT** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 129] by Defendant BSN Medical, Inc. ("BSN") to dismiss Plaintiff Melissa Anne McDaniel's personal injury claim and Plaintiff Michael McDaniel's loss of consortium claim. Fully briefed, the matters are ripe for decision. For the reasons that follow, the motion is **GRANTED**.

## I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND FACTS

This controversy arises out of an injury suffered by Mrs. McDaniel while operating a micropleater ("MP-1")[1] at the American Nonwovens Corporation ("ANC") in Beaver Dam, Kentucky. On June 20, 2006, Mrs. McDaniel realized that debris had collected near the nip point of the MP-1. With the machine still operating, she put on a heat resistant glove and attempted to remove the debris. Her left hand became caught between the two heated rollers and her arm was pulled through the machine up to her forearm. Mrs. McDaniel ultimately required the amputation of her arm below the elbow due to her injuries. She later received worker's compensation through

---

[1] A micropleater is a piece of machinery whose function is to pull a material known as "nonwoven" between two heated rollers and transform it into a fabric to be used by health care professionals as under cast padding.

her employer, ANC. Although the MP-1 is equipped with an acceptable industry standard guard when the pleater roll is in the down position, Plaintiffs allege that when the pleater roll is raised, the guard is ineffective to prevent operators from coming into contact with the nip point.

The MP-1 was designed and manufactured by Johnson and Johnson ("J&J"). DePuy Orthopaedics, Inc. ("Depuy"), a wholly owned subsidiary of J&J, initially supplied the MP-1 to ANC in order for ANC to exclusively manufacture the under cast padding for DePuy's business. In March of 2004, BSN purchased Depuy's cast padding business and acquired the MP-1 through the sale. Following the sale, ANC continued to use, possess, and maintain the MP-1 in order to exclusively supply BSN with the cast padding product.

### III. DISCUSSION

Plaintiffs allege that BSN, as a supplier, failed to exercise reasonable care to make the MP-1 safe and to warn of the MP-1's dangerous propensities. BSN alleges that it was a mere owner of the MP-1 and, without control or possession of the machine, owed no duty to Plaintiffs. Alternatively, BSN claims immunity from Plaintiffs' tort claims under Kentucky's Workers' Compensation Act ("KWCA"). Plaintiffs allege the KWCA is inapplicable to these facts.

**A. Negligence Claim**

In order to prevail on its negligence claim, Plaintiffs must establish: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky. 1992) (citing Illinois Central R.R. v. Vincent, 412 S.W.2d 874, 876 (Ky. 1967)). BSN has only challenged the existence of the first element, duty, so for purposes of this opinion breach and injury are assumed present. The threshold question of law for the Court therefore is whether BSN owed a duty as a supplier of the MP-1. See Pathways, Inc. v.

Hammons, 113 S.W.3d 85, 89 (Ky. 2003) ("Duty, the first element, presents a question of law.").

"If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." Jenkins v. Best, 250 S.W.3d 680, 688 (Ky. Ct. App. 2007) (quoting Ashcraft v. Peoples Liberty Bank & Trust Co., 724 S.W.2d 228, 229 (Ky. Ct. App. 1986)).

The Restatement (Second) of Torts § 388 (1965) provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Id. § 388. Similarly section 392 provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Id. § 392.

Restatement (Second) of Torts § 388 cmt. c (1965) defines a "supplier" as "any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control." BSN contends that they are not "suppliers of chattel" because they have exercised neither control nor possession over the MP-1. Plaintiffs allege that although BSN never had possession of the MP-1, they nevertheless controlled it. The Court agrees with Plaintiffs.

It is true that BSN never "gave" the machine in the physical sense to ANC because ANC already had it when BSN become its owner. However, BSN nevertheless allowed ANC to retain the machine so that it could continue to use it to provide product to BSN. In essence, BSN supplied the machine to ANC.

It is also uncontroverted that "BSN remained responsible for paying for repairs to be made on the MP-1 and ANC could not make any major repairs or changes to the [MP-1] without specific approval." (Pl.'s Resp. to Mot. Summ. J. 17.) Further, "BSN engineer Mark Grady visited ANC in either later summer or early fall 2007 to evaluate what would be necessary to relocate [the MP-1] 'in the event this were necessary for business reasons.'" (Id. at 10.) BSN also admits they would have stopped the MP-1 if they learned it had caused a serious injury. (Maitland Dep. 155:19-156:11, July 27, 2009.) Despite never having actual possession of the MP-1, BSN exercised sufficient control over the machine which also triggers their duty as a supplier per the restatement. Because BSN was a supplier of the MP-1, BSN had a duty of care.

**B. Contractor Immunity**

BSN argues they are entitled to "up the ladder immunity" from the tort claims pursuant to the KWCA because Mrs. McDaniel has already received workers' compensation benefits through

5

ANC. "[A]n entity 'up the ladder' from the injured employee and who meets all the qualifications of a 'contractor' under KRS § 342.610(2) is entitled to the immunity provided by KRS § 342.690." Davis v. Ford Motor Co., 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003) (citing KRS § 342.690(1)). For purposes of Chapter 342, "the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation." KRS § 342.690(1).

KRS § 342.610(2) provides in part as follows:

> A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his or her carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. A person who contracts with another:
>
> . . . .
>
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
>
> shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. . . .

KRS § 342.610(2).

The intended purpose of section 342 is to "discourage owners and contractors from hiring fiscally irresponsible subcontractors and thus eliminate workers' compensation liability. It accomplishes this purpose by imposing liability upon the 'up-the-ladder' contractor for compensation to the employees of a subcontractor unless the subcontractor has provided for the payment." Matthews v. G & B Trucking, Inc., 987 S.W.2d 328, 330 (Ky. Ct. App. 1998) (citing

6

Tom Ballard Co. v. Blevins, 614 S.W.2d 247, 249 (Ky. Ct. App. 1980)). Thus, the inquiry here is whether ANC was performing work for BSN of a kind which is a regular and recurrent part of the work that BSN normally does. If so, then BSN is deemed a contractor under KRS § 342.610(2) and entitled to up the ladder immunity.

Plaintiffs have cited Davis v. Ford Motor Co. where the court addressed the availability of the "up the ladder" defense for a purchaser of component parts and found that "the mere recipient of goods is not a statutory contractor." 244 F. Supp. 2d 784, 788 (W.D. Ky. 2003). The facts of that case are clearly distinguishable from these facts. In Davis, the Budd Company simply supplied a component part to Ford Motor Company. The Davis court concluded that some additional service or conduct in relation to goods supplied was required in order to cross the line from supplier to subcontractor. Id. at 790. Judge Heyburn recognized that different scenarios could produce different results. Id. This case presents a different scenario. Here, ANC did not simply manufacture and supply a component part, it manufactured the entire finished product. In the Court's view, this certainly qualifies as the "additional conduct" required in Davis.

It is worth noting that in Davis, the court did not engage in an analysis as to whether the stamping of crew cab roof panels was a regular and recurrent part of the business of Ford Motor Company. However, in cases such as these, that is to be the central focus. Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 838 (W.D. Ky. 2005). It is uncontroverted that BSN owns and operates facilities around the world that produce medical fabrics, including the same fabric which ANC produced for BSN at the plant in Beaver Dam, Kentucky. A regular and recurrent part of BSN's business was the manufacturing of cast padding, a job that was being performed by ANC. Accordingly, BSN is a "contractor" under section 342.690(1) and is entitled to immunity from tort

7

liability as provided in that section.

### C. Loss of Consortium Claim

A loss of consortium claim "is derivative in nature, arising out of and dependent upon the right of the injured spouse to recover." Floyd v. Gray, 657 S.W.2d 936, 941 (Ky. 1983). Mr. McDaniel's claim "arises out of the same personal injury" as his wife's claim. Id. Thus, Mr. McDaniel "is subject to all of the same defenses as are available against [his wife]." Id. BSN has qualified for immunity from Mrs. McDaniel's tort claim and therefore is also immune from Mr. McDaniel's loss of consortium claim. The loss of consortium claim is dismissed.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [DN 129] is **GRANTED**. BSN's Motion to Exclude Plaintiffs' Expert Donald Depamphilis [DN 130], BSN's Motion to Exclude Plaintiffs' Expert Stan Smith [DN 135], and Plaintiffs' Motion to Strike and Exclude BSN's Expert Luca Conte [DN 138] are **DENIED AS MOOT**.

cc. Counsel of Record